■ HENRY RUBIO, Appellant, v ROSEMARY RUBIO, Respondent. [897 NYS2d 170]—

In a matrimonial action in which the parties were divorced by judgment dated February 13, 2003, the father appeals, as limited by his brief, from so much of an order of the Supreme Court, Queens County (Flaherty, J.), dated August 28, 2009, as, after a hearing, granted the mother's motion for permission to relocate to North Carolina with the parties' child.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the mother's motion for permission to relocate to North Carolina with the parties' child is denied, and the matter is remitted to the Supreme Court, Queens County, to direct the mother to produce the child in the State of New York and to determine the date upon which the child must be produced.

The parties separated shortly after their daughter was born in 2000. They divorced in 2003, after a 2½-year marriage. While the mother had custody of the child pursuant to a stipulation of settlement in the divorce proceeding, the child spent the first three weekends of each month with the father and his family, in addition to holidays and summer vacation.

The mother moved in the Supreme Court for permission to relocate to North Carolina with the child. At an expedited hear-

ing, the mother asserted that she desired a new beginning for herself and the child and that they would enjoy a higher standard of living and an improved quality of life. While the mother initially proposed continuing the father's existing visitation and bearing the expense of flying the child to New York three times per month, she subsequently suggested reducing the father's visitation to one visit per month, with extended summer vacation.

The Supreme Court's primary focus must be on the best interests of the child when reviewing a custodial parent's request to relocate (see Matter of Tropea v Tropea, 87 NY2d 727, 739 [1996]; Matter of Martino v Ramos, 64 AD3d 657 [2009]; Noble v Noble, 52 AD3d 490 [2008]). The custodial parent must demonstrate by a preponderance of the evidence that the proposed move is in the child's best interests (see Martino v Ramos, 64 AD3d at 658; Noble v Noble, 52 AD3d at 491; Matter of Schreurs v Johnson, 27 AD3d 654, 655 [2006]).

The factors to be considered "include, but are certainly not limited to, each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d at 740-741). "Indeed, even where the move would leave the noncustodial parent with what may be considered 'meaningful access,' there is still a need to weigh the effect of the quantitative and qualitative losses that naturally will result against such other relevant factors as the custodial parent's reasons for wanting to relocate and the benefits that the child may enjoy or the harm that may ensue if the move is or is not permitted" (id. at 739).

Here, the record lacked a sound and substantial basis for the Supreme Court's determination that the proposed relocation was in the child's best interests (cf. Matter of Martino v Ramos, 64 AD3d 657 [2009]; Scannevin v Scannevin, 51 AD3d 901, 902 [2008]; Matter of Fegadel-Anderson v Anderson, 9 AD3d 409 [2004]; Matter of Rotering v Rotering, 6 AD3d 718 [2004]). The mother's proposed employment situation in North Carolina was tenuous at best, the father's visitation with the child would be dramatically reduced by the relocation, and the mother failed to demonstrate by a preponderance of the evidence that the

proposed move would enhance the child's life economically, emotionally, and educationally (*compare Bruno v Bruno*, 47 AD3d 606 [2008]). Accordingly, we remit the matter to the Supreme Court, Queens County, to direct the mother to produce the child in the State of New York and to determine the date upon which the child must be produced. Dillon, J.P., Santucci, Balkin and Sgroi, JJ., concur.